Argued August 17, affirmed September 19, 1977

# STATE OF OREGON, *Respondent,*
## *v.*
# DENNIS WAYNE LEHNHERR, *Appellant.*
### (No. 48889, CA 8159)

569 P2d 54

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

Defendant was convicted after a jury trial of burglary in the first degree and criminal conspiracy. The state concedes that the court's sentencing order incorrectly entered a judgment of conviction on both counts in violation of ORS 161.485(3). We remand for resentencing. *State v. Peterson,* 26 Or App 471, 552 P2d 1320 (1976).

Defendant's remaining assignments of error challenge the sufficiency of the evidence corroborating the testimony of an accomplice as required by ORS 136.440(1),[1] and the constitutionality of ORS 17.355(3) which permits the secret written polling of the jury.

The evidence introduced at trial established that two juveniles burglarized the Albany apartment of David Lyle at about 5:20 a.m. on the morning of October 20, 1976, were surprised by the victim when he awakened, and fled the apartment onto the street. Lyle chased the boys for some distance but was unable to catch them and returned to his apartment to call the police.

One of the juveniles, Stephen Pritchard, testified that defendant helped them plan the burglary while the three were at defendant's apartment on the east side of Albany, that defendant drove them across town to the victim's apartment on the south side of town at about 3:00 a.m. that morning, and that defendant waited in his car for them to return. Pritchard further testified that when the two boys fled from the apartment and began to get into defendant's car, defendant told them to run away because a policeman was parked down the street. Pritchard stated that the boys then

---

[1] ORS 136.440(1) provides as follows:

"A conviction cannot be had upon the testimony of an accomplice unles it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission."

walked back to defendant's apartment and were apprehended about 30 feet from it.

As corroboration, the state offered the testimony of Lyle that while in pursuit of the boys he observed a car parked across the street from his apartment building in which a male passenger was seated. He made his presence known to the driver, memorized the license number, and called the police. He gave them a description of the juveniles, the man and the car, and of the property missing from his apartment.

In addition, the state offered the testimony of several police officers. Officer Phil McClain testified that he determined from the information given by Lyle that the vehicle described belonged to defendant's brother and was being driving by defendant. Officer Robert Pulone testified that while defendant was being questioned following the burglary, he maintained surveillance of defendant's apartment and apprehended two juveniles a half block away. He stated that the boys appeared "tired from running" and were walking toward the apartment. One of the juveniles was positively identified by Lyle, and property matching the description of that taken from Lyle was found in the pockets of one of the boys. Finally, Detective Paul Miller testified that, when questioned twice about his activities the night of the burglary, defendant admitted having been parked near Lyle's apartment but "changed his story" with regard to why he was there.

■ In summary, the corroborative evidence indicates that at about 5:30 a.m. defendant was sitting alone in a car across the street from the victim's apartment, that defendant gave conflicting explanations to the police for his presence there; and that the accomplices were apprehended near, and walking toward, defendant's residence located on the other side of town. Although the corroborative evidence is circumstantial and may be insufficient of itself to sustain a conviction, it nevertheless fulfills the statutory requirement

that "there is some evidence, however slight, tending to connect the defendant with the crime." *State v. Caldwell,* 241 Or 355, 361, 405 P2d 847 (1965); *see also State v. Brake,* 99 Or 310, 195 P 583 (1921).

After the verdict was returned, defendant requested that the jury be polled. The court determined that the verdict was not unanimous and ordered the jury to return to the jury room to complete a written poll pursuant to ORS 17.355(3) which provides:

> "The jury in a criminal action may, in the discretion of the court, be polled in writing. If the jury is polled in writing the written results shall be sealed and placed in the court record."

Defendant objected to this procedure on the ground that it denied him his constitutional right to a public trial and due process.

On appeal, defendant restricts his constitutional argument to whether ORS 17.355(3) is contrary to Art I, §§ 10 and 11[2] of the Oregon Constitution which provide for the right to a public trial.

In *Brooks v. Gladden,* 226 Or 191, 358 P2d 1055 (1961), the court held that it was not a violation of due

---

[2] Art I, §§ 10 and 11 of the Oregon Constitution provide:

"Section 10. No court shall be secret, but justice shall be administered, openly and without purchase completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.—

"Section 11. In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

process to deny defendant the opportunity to poll the jury. If there is no due process right to poll there is no corresponding due process right as to the method of polling.[3] In *Brooks* the court reasoned:

"Ultimately the question is, as we have already suggested, one for our judicial sense of fairness, guided by our knowledge of the traditions which have shaped procedural rights and by our understanding of the mechanics of trial procedures, including the functioning of the jury in our present day practice. Viewing the denial of the trial judge to permit a poll of the jury against this background, we are of the opinion that defendant was not denied due process of law under our Constitution or under the Constitution of the United States." 226 Or at 204.

■ While *Brooks* did not expressly address the public trial issue under Art I, §§ 10 and 11 of the Oregon Constitution, the opinion implicitly encompasses that issue. The right to a public trial is embodied in the Sixth Amendment to the United States Constitution

---

[3] In *State v. Prado,* 26 Or App 481, 552 P2d 1317, Sup Ct *review denied* (1976), we were first asked to determine the constitutionality of ORS 17.355(3) but declined to do so because defendant's exception to the statutory method of polling the jury was not preserved in the record. However, in a footnote, we stated our conclusion with regard to the constitutional question should it be properly raised in the future:

"In *Brooks v. Gladden,* 226 Or 191, 358 P2d 1055, *cert denied* 366 US 974 (1961), and *State v. Lewis,* 18 Or App 206, 524 P2d 1231, Sup Ct *review denied* (1974), both decided before the legislature changed the jury polling statute (ORS 17.355(3)), it was held that the statutory right to poll the jury in a criminal case is absolute, but in neither case did the decision rest upon constitutional grounds. The new subsection (3) of ORS 17.355 provides:

" 'The jury in a criminal action may, in the discretion of the court, be polled in writing. If the jury is polled in writing the written results shall be sealed and placed in the court record.'

"No contention was made below or here that the court's remarks did not reflect the discretionary nature of the court's decision—whether a poll may be oral in open court, or written. And, of course, for the reason given in text we do not in this opinion decide upon the alleged question the defendant now raises—whether written polling of the jury violates the constitutional precept of public trial. If the *right* to polling of the jury is purely statutory, as indicated in *Brooks v. Gladden* and *State v. Lewis,* both *supra,* it is difficult to see why the statutory method for accomplishing the polling, applying equally to all defendants, rises to constitutional heights." 26 Or App at 483, 484, n. 2.

[ 1038 ]

and thus has become incorporated as part of due process under the Fourteenth Amendment. *In Re Oliver,* 333 US 257, 68 S Ct 499, 92 L Ed 682 (1948). In the context presented here, the right to a public trial does not afford defendant any additional rights not already protected by due process under both the Oregon and United States constitutions. It is well recognized that the right to a public trial is not absolute. For example, courts may restrict the public nature of a trial if necessary to preserve order or to protect the parties or witnesses.[4] The right to a public trial has never been conceived to encompass the deliberations of the jury. To the contrary, the long standing common law tradition has been to encourage and to protect the secrecy of the jury deliberations. That tradition was borne out of a concern to protect the integrity of the jury system. The apparent legislative purpose embodied in the jury polling method permitted by ORS 17.355(3) is directed at that same concern. *See* Minutes, House Judiciary Committee, April 14, 1975, p. 2. The statute neither violates due process nor defendant's right to a public trial.

Affirmed.

---

[4] *People v. Jelke,* 308 NY 56, 123 NE2d 769, 48 ALR2d 1425 (1954). In addition, the court may without jeopardizing the accused's right to a public trial: exclude youthful spectators from the courtroom, *United States v. Kobli,* 172 F2d 919 (3rd Cir 1949); exclude unruly spectators from the courtroom, *People v. Byrnes,* 84 Cal App 2d 72, 190 P2d 290, *cert denied* 335 US 847 (1948); station police in courtroom and search or refuse admission to spectators to prevent violence, *People v. Santo,* 43 Cal 2d 319, 273 P2d 249, *cert denied, sub nom Graham v. California,* 348 US 959 (1954); and exclude the public from illegitimacy proceedings or sex crime trials to encourage female witnesses to come forward and testify without inhibition. *Commonwealth v. Blondin,* 324 Mass 564, 87 NE2d 455, *cert denied* 399 US 984 (1949).