Argued and submitted September 5, 1979, resubmitted
In Banc on record and briefs February 14, affirmed in part;
reversed in part and remanded for trial February 25,
reconsideration denied May 9,
petition for review denied June 10, 1980 (289 Or 275)

## STATE OF OREGON,
*Appellant,*

*v.*

## HARLEY GUY LANTZ,
*Respondent.*

(No. 33105, CA 13873)

607 P2d 197

[695]

Karen H. Green, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Robert S. Gardner, Corvallis, argued the cause for respondent. With him on the brief was Ringo, Walton, Eves & Gardner, P.C., Corvallis.

RICHARDSON, J.

THORNTON, J., dissenting opinion.

**RICHARDSON, J.**

The state appeals an order dismissing an indictment charging defendant with sodomy in the first degree, ORS 163.405. Following a pretrial omnibus hearing, ORS 135.037, the court held that Betty Windom, a state's witness, was not competent to testify. The court further held, pursuant to ORS 163.475, that evidence concerning the victim's prior sexual conduct was admissible. The state did not appeal either ruling but declined to proceed further and submitted an order of dismissal. The order was granted and the state appeals. ORS 138.060. Defendant's motion to dismiss the appeal was denied.

In June, 1978, defendant was tried and convicted of the crime charged in the indictment. At trial, Betty Windom, who is in her mid-thirties, testified for the state concerning her contacts with defendant at the time the crime was allegedly committed and concerning statements defendant made to her after the date of the crime. She also testified that prior to trial defendant had threatened to kill her if she testified. Following the trial, Windom told the district attorney that her testimony regarding the threat was false. Defendant moved for a new trial based on an affidavit of Windom that she had lied about the threat. Windom testified at the hearing on the motion for new trial. The motion was granted.

Following the granting of the new trial, the district attorney set up an appointment to speak to Windom, which she failed to attend. She was then informed that she would be charged with perjury for her false statements made under oath at defendant's trial. She then told a police officer that she had lied at the hearing on the motion for new trial and that her testimony at trial was true. She was given a polygraph examination which indicated that she had not been truthful at the trial. Upon hearing the results of the polygraph examination, Windom again changed her story and said she had testified truthfully at the hearing on the new

[697]

trial motion. The state informed the court that it did not intend to offer Windom's testimony regarding the threat but did intend to call her as a witness.

Defendant challenged Windom's competency as a witness on the grounds that she was of unsound mind, ORS 44.030, and that she had no appreciation for the truth. ORS 44.310. Windom's attorney was called as a witness and testified concerning his recent interviews with her.[1] He stated that her ability to recall certain events was limited and that he was unable to give a yes or no answer as to whether she appreciated the significance of an oath. Windom's father testified that she is retarded and that she could not understand taking an oath. He stated that she has difficulty in recalling events that occurred in the recent past. Her husband said that he hoped she understood the concept of honesty but that she did not always tell him the truth.

A psychiatrist examined Windom just prior to the pretrial hearing. His letter report was submitted to the court. In substance, he found that she had numerous psychiatric and neurological complaints, that she was suffering from anxiety and depression but that she was not psychotic. He concluded:

> "Briefly, I do not believe that Mrs. Windom is psychotic in any way, and I have no reason to believe that she is unable to defend herself or is not responsible for her behavior. The possibility of a neurological problem remains nevertheless. * * *"

Windom, although available, was not interviewed by the court.

The competency of a witness to testify is a matter to be determined by the trial court and that determination will not be set aside on appeal except for abuse of discretion. *State v. Longoria,* 17 Or App 1, 520 P2d

---

[1] Windom's attorney was faced with a dilemma. He had been told by the district attorney that if Windom was found to be competent as a witness she faced a perjury charge. If, however, she was declared incompetent, no such charge would be made.

912, *rev den* (1974); *State v. Pace,* 187 Or 498, 212 P2d 755 (1949); *State v. Stich,* 5 Or App 511, 484 P2d 861, *rev den* (1971). When the competency of a witness is questioned, a *voir dire* examination is proper and encouraged. The standard to be applied is found in ORS 44.020, which provides in relevant part:

> "All persons, except as provided in ORS 44.030, who, having organs of sense can perceive, and perceiving can make known their perceptions to others, may be witnesses. * * *"

ORS 44.030 provides in pertinent part:

> "The following persons are not competent witnesses:
>
> "(1) Those of unsound mind at the time of their production for examination.
> "* * * * *"

In *State v. Longoria, supra,* in applying these statutes we held that it is only those mental defects which interfere with the ability to perceive and relate as required by ORS 44.020 that disqualify a witness on general competency grounds or as being of unsound mind as provided in ORS 44.030(1). The fact that Windom may be retarded does not by itself disqualify her as a witness. A mentally disabled person of limited intelligence or intellectual abilities may nevertheless be able to perceive events, recall them, and accurately relate the recollection from the witness stand. The evidence of Windom's mental condition does not demonstrate that she is unable to perceive events or relate her perceptions as a witness. The record contains a transcript of Windom's testimony at the trial. She appeared to have at least average ability to respond to questions and to relate her recollection of the events she was testifying about. She was cross-examined and the transcript discloses no difficulty or confusion in responding.[2]

---

[2] For example, when asked what time she saw defendant in a certain tavern, she related that it was before 9:00 p.m. because the band started playing at that time and she saw defendant before the music started.

The demonstrated fact that a person has lied on a number of occasions or given conflicting accounts of a particular event is not a basis of disqualification. The quality of the testimony is a determination left to the trier of fact. Whether a person, who has the ability to perceive an event, recall it and relate the recollection will tell the truth is to be tested by cross-examination and not by a motion to disqualify the witness as incompetent. The competency inquiry should be made with a view to the preference toward allowing the trier of fact to be the ultimate judge of the quality of the evidence.

Defendant contends Windom has no appreciation for the significance of an oath or the significance of telling the truth and should be disqualified as a witness. Assuming that failure to understand the significance of an oath is an independent ground for disqualifying a witness, there was scant basis for such a finding. Windom's father said that she did not understand the oath. Her attorney and husband gave no such opinion. The psychiatrist's report, evidently made in response to an erroneous impression that he was examining Windom to determine her ability to stand trial, found her competent to stand trial. A psychiatrist's finding that she is able to defend herself and responsible for her behavior supports a conclusion that she possesses the ability to understand the oath and appreciate its significance.

Windom testified under oath at the trial and at the hearing on the motion for new trial, and she signed an affidavit in conjunction with the new trial motion. There was no objection to her testimony or affidavit on the basis that she did not appreciate the oath. The fact that a person may violate the oath taken does not necessarily mean they do not understand or appreciate its significance. The court did not examine Windom so it was not in a position to assess her ability to understand the oath. We conclude, based on the information available to the court, that it was abuse of discretion to disqualify Windom as a witness.

The state's second assignment of error challenges the trial court's ruling that certain testimony regarding the victim's prior sexual conduct or reputation would be admitted at trial. The indictment alleged an act of forcible anal intercourse. At the trial the victim testified that the crime occurred on November 5, 1977, but that she did not report the incident to the police until November 8, 1977. She explained that she did not report the incident because she was degraded and humiliated.

Prior to the date scheduled for the second trial, defendant moved for a hearing to determine the admissibility of evidence of the victim's prior sexual conduct under ORS 163.475. The proffered evidence was essentially of two types. The first involved testimony that the victim's reputation in the community for chastity was poor. The second was that the victim had told the witnesses who testified at the hearing that she had been a prostitute in Alaska and California, that she would "go to bed and do anything a man wanted for $100" and that if she needed money she could "turn a trick" for $100 anytime.

Defendant argues the evidence that the victim had told three witnesses that she had been a prostitute and would do anything a man wanted for $100 would support an inference that she was not degraded or humiliated by the defendant's forcible anal intercourse and thus rebut her explanation for not promptly reporting the crime.

The state argues that the proffered evidence is evidence of the victim's sexual character, which is inadmissible for any purpose under ORS 163.475(2). If, the state argues, the evidence is of the victim's prior sexual conduct, ORS 163.475(3), it is not relevant to rebut her explanation for failing to promptly report the crime because it requires an unsupportable inference that a prostitute cannot be degraded or humiliated by forcible anal intercourse.

[701]

The crucial question is whether the evidence of prior sexual conduct is relevant and probative. This determination must be made with a view toward the policy of the statute, ORS 163.475, which is to protect the victim from unnecessary disclosure of prior sexual history and the attendant embarrassment and humiliation. *See State v. Eggleston,* 31 Or App 9, 569 P2d 1088 (1977), *rev den* 281 Or 99 (1978). Another purpose of the statute is to encourage victims to report illegal sexual conduct by reducing the possibility that their sexual history will be examined at trial.

In *State v. Jalo,* 27 Or App 845, 557 P2d 1359 (1976), *rev den* (1977), where we reviewed the former version of this statute, we held the statutory policy must be subordinated to the defendant's constitutional right to confrontation. The tug of these two principles requires the court to strike a balance. A proper balance requires the defendant to demonstrate that the proffered evidence is relevant and has substantial probative value in establishing or rebutting a material issue in the trial.

The relevant statute, ORS 163.475, provides:
"* * * * *

"(2) In a prosecution under ORS 163.355 to 163.425, evidence of the sexual character or sexual reputation of the complainant is not admissible for any purpose, and reference to the sexual character or sexual reputation of the complainant shall not be made in the presence of the jury.

"(3) Except as provided in subsection (4) of this section, in a prosecution under ORS 163.355 to 163.425, evidence of previous sexual conduct of a complainant is presumed to be irrelevant and shall not be admitted and reference to that conduct shall not be made in the presence of the jury. This presumption may be overcome.
"* * * * *."

Subsection (4) sets forth a procedure for a pretrial determination of the evidence subsection (3) makes presumptively irrelevant. If the court finds that the

[702]

evidence is relevant and otherwise admissible, the statute requires the court to issue an order stating what evidence may be introduced and the nature of the questions permitted. Following the pretrial hearing the court ordered:

> "* * * [T]hat if the evidence received at the new trial to be held in the above-captioned case is substantially the same as the evidence received at the original trial, that the testimony concerning [the victim's] statement that she was a prostitute, presented by the defendant in support of his motion, would be admissible in the new trial."

We interpret this order as rejecting the evidence as to the victim's reputation for chastity. That evidence is clearly made inadmissible by ORS 163.475(2). The statute, while differentiating between sexual character or reputation and prior sexual conduct, does not define the difference. There is inevitably some overlap in the two types of evidence. Sexual character or reputation is in some measure determined by prior acts of sexual conduct. Evidence that the victim engaged in a prior act or acts of sexual conduct may lead to an inference of sexual character or reputation. It is difficult to devise a precise definition which will serve all purposes under the statute. If the evidence is offered merely to demonstrate the sexual character or reputation of the victim, it is inadmissible. If, however, the defendant identifies particular sexual conduct of the victim, which he demonstrates is relevant and probative of an issue at trial or rebuts evidence presented by the state, it may be admitted despite the fact that there are permissible inferences respecting the victim's sexual character or reputation. The distinction is essentially the purpose for which the evidence of sexual conduct is offered.

Crimes of this nature rarely involve witnesses to the event other than the victim and the defendant. The victim's testimony is usually an important part of the state's case and credibility then becomes a primary issue. It is important for the defendant to seek to erode

the victim's credibility in his defense. If the victim promptly reports the incident, it lends credibility to the victim's testimony regarding the sexual assault. On the other hand, failure to promptly report the event militates against credibility. The explanation for not promptly reporting the crime is an important ingredient of the credibility determination.

Here the victim testified that she did not report the crime because she was degraded and humiliated by the forcible anal intercourse. Evidence that would tend to rebut that explanation is clearly relevant because it bears on the credibility of her testimony about the sexual assault. The evidence also has substantial probative value to rebut the explanation. The jury could infer that the victim, who admitted being a prostitute for a number of years and who stated that she would do anything with a man for $100, would not feel degraded or humiliated by a sexual assault. There is also a permissible inference that even a prostitute would be humiliated by forcible anal intercourse. Whether one or the other of these permissible inferences is to be given greater weight is a matter for the trier of fact. The court did not err in ruling the evidence admissible.

The parties offer different interpretations of the court's order. The statute, ORS 163.475(4), requires the court to specify in the order what evidence may be introduced and the nature of the questions permitted at trial. Prior to trial the parties should seek a clarification of the order consistent with the statute.

The orders disqualifying the witness and dismissing the indictment are reversed. The order admitting the evidence is affirmed.

Affirmed in part, reversed in part and remanded for trial.

**THORNTON, J.,** dissenting.

While agreeing with the majority's ruling on the first point, namely, the admissibility of the testimony

of Betty Windom, I strongly disagree with its ruling on the second assignment of error. Contrary to the majority, I find the challenged evidence was not relevant to or logically probative of any issue in the case. Its admission for the stated purpose would, in my opinion, be reversible error.

Moreover, that the complainant might have told third parties that she is or was a prostitute, or that she had once said that she would commit any type of sexual act for $100, does not tend to prove that she was not humiliated by being forced to submit to sodomy, nor does it tend to rebut her explanation for delaying reporting the alleged crime. The logic that a person who would perform a sexual act voluntarily on the one hand would not be humiliated if compelled to do it is patently false. It has long been settled that even an admitted prostitute can be the victim of a rape.

In my view, admitting this evidence would be purely a red herring. It would have the effect of diverting the jury's attention to a wholly collateral issue, namely, whether or not the complainant was humiliated by the alleged act. That issue has no bearing whatsoever on any issue in the case, which is of course the guilt or innocence of the defendant.

A similar issue arose in the early Oregon case of *Leverich v. Frank,* 6 Or 212 (1876). Plaintiff Leverich brought an action for slander, claiming that defendant had called her a thief. To show that plaintiff's moral character was bad, and to show that she was not worthy of belief as a witness, defendant offered in evidence a letter written by plaintiff to a man, claiming that it tended to show that the plaintiff was unchaste. The court held that character cannot, as claimed by defendant and under the statute, be shown by particular wrongful acts.[1]

---

[1] The court further observed:

" * * * Character and reputation are not synonymous terms. Character is what a man or woman is morally, while reputation is what

Second, under ORS 163.475(2),

" * * * evidence of the sexual character or sexual reputation of the complainant is not admissible for any purpose, and reference to the sexual character or sexual reputation of the complainant shall not be made in the presence of the jury."

Evidence that this complainant was a prostitute or that she had once said somewhere that she would commit any type of sexual act with a man for $100, is in actuality "evidence of sexual character and reputation," ORS 163.475(3), rather than sexual conduct, and hence is barred by the above provision. As used in subsection (3), the term "sexual conduct" means specific acts.

In the final analysis, the sole function of the challenged evidence would be to blacken complainant's character and to show that she is an immoral woman. *Leverich v. Frank, supra.* It is akin to the state's showing prior bad acts of a criminal defendant in order to prove him guilty of the crime for which he is now on trial. Such evidence is almost always inadmissible. *See State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Hockings,* 29 Or App 139, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978). By the same reasoning, the challenged evidence of the sexual character and reputation of this complainant is clearly inadmissible here.

---

he or she is reputed to be. Yet reputation is the estimate which the community has of a person's character; and it is the belief that moral character is wanting in an individual that renders him unworthy of belief. That is to say, that reputation is evidence of character, and if the reputation is bad for truth, or reputation is bad in other respects affecting the moral character, then the jury may infer that the character is bad and the witness not reliable. General character has always been proved by proving general reputation. * * * [C]haracter can be attacked or supported by proof of general reputation, and particular facts cannot be proven to affect the character of the witness, for the reason that a person is supposed to be able at all times to support his general character by evidence in its support, but is not supposed to be at all times and without notice ready to disprove or explain certain particular acts." *Leverich v. Frank,* 6 Or at 220.

Finally, the theory of the defense at the first trial was alibi—that he was not the man who committed the assault. When defendant does not claim consent or lack of forcible compulsion, evidence of the complainant's prior sexual conduct is beside the point and inadmissible. Unlike in *State v. Jalo,* 27 Or App 845, 557 P2d 1359 (1976), *rev den* (1977), neither motive nor bias is an issue in the case at bar. *See* ORS 163.475(5), which permits evidence of the challenged type to show such things as motive, bias, etc.

For the above reasons, I respectfully dissent.

Buttler, Gillette and Roberts, JJ, join in this dissenting opinion.