Argued and submitted December 12, affirmed September 8,
reconsideration denied October 15,
petition for review allowed November 3, 1981 (291 Or 893)
See later issue Oregon Reports

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL EDWARD BLAKE,
*Appellant.*

## (No. 79-7-322, CA 17577)

633 P2d 831

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

Warden, J., specially concurring.

Joseph, C.J., dissenting.

## WARREN, J.

Defendant seeks reversal of his convictions for first degree rape, ORS 163.375, and first degree sodomy, ORS 163.405. He assigns as error the trial court's: (1) denial of his motion for new trial; (2) failure to give his requested instruction that the complainant's testimony should be viewed with caution; and (3) denial of his motion objecting to the exclusion of the public from the sexual conduct hearing held pursuant to ORS 163.475(4). We affirm.

Defendant contends that his motion for new trial should have been granted because the prosecutor: (1) during both voir dire and closing arguments violated a court order prohibiting the introduction of evidence of complainant's belief that defendant had put LSD into her drink; and (2) in the presence of the jury improperly referred to defendant's prior drug use.

In *State v. Truxall,* 2 Or App 214, 217, 476 P2d 643 (1970), we stated:

> " ' * * * Denial of a motion for a new trial based upon alleged errors committed on [sic] the trial, of which errors the appellant had knowledge at the time, may not be assigned as error on appeal. *Sullivan et al v. Carpenter,* 184 Or 485, 494, 199 P2d 655 (1948); *Shearer v. Lantz,* 210 Or 632, 312 P2d 581 (1957).['] "

However, due to the fact that the defendant in *Truxall* had objected below to each of the errors claimed on appeal, we considered his alleged errors and did not penalize him for improperly referring to his motion for new trial.

■ ■ In the present case, defendant objected to the prosecutor's comment on voir dire concerning the victim's belief that defendant had drugged her. Defendant also objected to the prosecutor's remark regarding his prior drug use. In both instances, he moved for mistrial. Thus, defendant preserved these issues for review. Even though here, as in *Truxall,* defendant has erroneously assigned as error the denial of his motion for a new trial, we will treat his arguments as attacking the trial court's denial of his motions for mistrial. However, defendant failed to object to the prosecutor's comment during closing argument regarding complainant's belief that she had been drugged by

defendant. This alleged error has not been preserved, and we will not consider it. *State v. Gwyther,* 4 Or App 473, 476, 479 P2d 248 (1971).

■■  The decision to grant a motion for mistrial rests in the sound discretion of the trial court. *Kashmir v. Patterson,* 43 Or App 45, 50, 602 P2d 294 (1979), *aff'd* 289 Or 589, 616 P2d 468 (1980). Such a ruling will not be overturned absent a showing that the trial court abused its discretion by improperly tolerating uninvited prejudice. While we agree that the prosecutor's comment on voir dire was improper, it did not constitute reversible error. Moreover, we note that the trial court gave a cautionary instruction immediately after the remark was made.

■  Defendant further maintains that error was committed when the prosecutor posed the following question to the complainant:

"Q.  Did he ever tell you about his prior drug use?
"A.  No."

This question may have implied to the jury that defendant had previously used drugs. However, in view of complainant's negative answer and her subsequent testimony, which defendant sought to have introduced, that on the night before the alleged rape and sodomy she, defendant, and another man smoked hashish together, we conclude reversible error was not committed.

■■  In his second assignment of error, defendant contends that the trial court erred in failing to instruct the jury that the victim's testimony should be viewed with caution. While such a cautionary instruction has been approved by this court, the decision to give it is discretionary. *State v. Harwood,* 45 Or App 931, 941, 609 P2d 1312, *rev den* 289 Or 337 (1980). After reviewing the testimony, we conclude that the trial court did not abuse its discretion by refusing to give the requested instruction.

Finally, defendant challenges the constitutionality of ORS 163.475(4), which requires an *in camera* hearing to determine the admissibility at trial of the victim's prior sexual conduct. Defendant asserts that this procedure

denies the accused his right to a public trial, guaranteed by Article I, sections 10[1] and 11,[2] of the Oregon Constitution and by the Sixth[3] and Fourteenth Amendments to the Constitution of the United States.

In order to pass on the constitutionality of subsection (4) of ORS 163.475, we must view it in perspective with the entire statute. ORS 163.475 provides:

"(1) For the purposes of this section, 'complainant' means the alleged victim of the crime for which the defendant is prosecuted.

"(2) In a prosecution under ORS 163.355 to 163.425, evidence of the sexual character or sexual reputation of the complainant is not admissible for any purpose, and reference to the sexual character or sexual reputation of the complainant shall not be made in the presence of the jury.

"(3) Except as provided in subsection (4) of this section, *in a prosecution under ORS 163.355 to 163.425, evidence of previous sexual conduct of a complainant is presumed to be irrelevant* and shall not be admitted and reference to that conduct shall not be made in the presence of the jury. *This presumption may be overcome.*

"(4) *If a defendant wishes to elicit evidence or testimony concerning previous sexual conduct of the complainant, the defendant must, prior to the offering of such evidence or making reference thereto, request a hearing* to be held to determine whether the evidence will be admitted. *The request for a hearing shall be made prior to the trial* unless for good cause shown. Good cause shall be deemed to exist if the defendant shows that the evidence he wishes to offer was not reasonably available to him prior to trial. *The court shall conduct a hearing out of the*

---

[1] Article I, section 10, of the Oregon Constitution states:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation. —"

[2] Article I, section 11, of the *Oregon Constitution states, in part:*

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed * * *."

[3] The *Sixth Amendment of the United States Constitution provides in part:*

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

*presence of the jury and the public and shall take such testimony and evidence as it deems necessary.* If the court finds that the evidence or testimony sought by the defendant regarding the previous sexual conduct of complainant is relevant for the purpose offered and is not otherwise inadmissible, the court shall issue an order stating what evidence may be introduced by the defendant, and the nature of the questions permitted at trial.

"(5)  Evidence of the complainant's previous sexual conduct that may be considered relevant includes, but is not limited to:

"(a)  Evidence that relates to the motive or bias of the complainant; or

"(b)  Evidence that is necessary to rebut or explain scientific or medical evidence offered by the state.

"(6)  Nothing in this section shall limit the right of either the state or the defendant to impeach the credibility of a witness by proof of a prior conviction of a crime." (Emphasis supplied.)

The right to public trial in all criminal prosecutions is guaranteed by Article I, section 11, of the Oregon Constitution and by the Sixth Amendment to the United States Constitution. However, the right to public trial is not absolute. *Gannett Co. v. DePasquale,* 443 US 368, 383, 99 S Ct 2898, 61 L Ed 2d 608 (1979); *State v. Lehnherr,* 30 Or App 1033, 1039, 569 P2d 54 (1977). Courts have recognized that the right to public trial must be balanced against other interests that may justify exclusion of the public from the courtroom. *United States v. Eisner,* 533 F2d 987 (6th Cir 1976), *cert den* 429 US 919 (1976); *Geise v. United States,* 262 F2d 151 (9th Cir 1958), *reh den* 265 F2d 659, *cert den* 361 US 842 (1959); *United States ex rel Smallwood v. LaValle,* 377 F Supp 1148 (EDNY 1974), *aff'd* 508 F2d 837 (2nd Cir 1974), *cert den* 421 US 920 (1975); *see generally* Annot., Exclusion of Public During Criminal Trial, 156 ALR 265 (1945); Annot., Validity and Construction of Constitution or Statute Authorizing Exclusion of Public in Sex Offense Cases, 39 ALR 3d 852 (1971); Annot., Federal Constitutional Right to Public Trial in Criminal Case - Federal Cases, 61 L Ed 2d 1018, § 10 et seq (1980).

In holding the Sixth Amendment applicable to the states through the Fourteenth Amendment, the Supreme

Court in *In Re Oliver,* 333 US 257, 266, 270, 68 S Ct 499, 92 L Ed 682 (1948), described the history and significance of the Sixth Amendment as follows:

> "This nation's accepted practice of guaranteeing a public trial to an accused has its roots in our English common law heritage. * * *
>
> " * * * * * *
>
> " * * * Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." (Footnotes omitted.)

The benefits inuring from public trial were recapitulated in *Gannett Co. v. DePasquale, supra,* 443 US at 383, wherein the Supreme Court stated:

> "There can be no blinking the fact that there is a strong societal interest in public trials. Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system."

Although *Gannett* concerned the right of the public and press to attend a pretrial suppression hearing in which the accused had waived his right to public trial, the Court's analysis of the Sixth Amendment public trial guarantee is helpful in considering the issues presented in the case at bar. In *Gannett* the Supreme Court held that the Sixth Amendment grants neither the public nor the press an enforceable right of access to a pretrial suppression hearing. The Court emphasized the fact that historically pretrial proceedings have never been accorded the same degree of openness as actual trials.[4] The Court also referred to a

---

[4] We note that strong policy considerations may militate against a general exemption of pretrial hearings from the public trial provision of the Sixth Amendment. *United States v. Cianfrani,* 573 F2d 835 (3d Cir 1978). In any event, it is clear that in Oregon the provision of Article I, section 10, that "no court shall be secret," applies to all judicial proceedings. *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980).

number of cases upholding exclusion of the public from the trial itself. *Gannett Co. v. DePasquale, supra,* 443 US at 388 n 19. Included in this reference were citations to rape cases in which both statutory and judicial limitations on public trials were sustained.[5]

In a decision based on Oregon's public trial provision of Article I, section 11, the Supreme Court reversed a trial court order excluding the public from the *trial* of a defendant accused of assault with intent to rape. *State v. Osborne,* 54 Or 289, 103 P 62 (1909). The *Osborne* court did not require the defendant to demonstrate actual prejudice. Rather, the court found that once the defendant showed his constitutional right to a public trial had been violated, actual injury would be conclusively presumed.

> "The very fact that a defendant is tried in the absence of the public, or, in other words, that the trial was secret, might in many instances deprive him of the power of showing that he had not had a fair trial. This in itself might result in the affirmance of a judgment of conviction

---

[5] On non-Sixth Amendment grounds the right of the public to attend trials was subsequently recognized in *Richmond Newspapers, Inc. v. Virginia,* 448 US 555, 100 S Ct 2814, 65 L Ed 2d 973 (1980), where the Court held that, absent an overriding interest articulated in the trial court findings, the public has a right guaranteed under the First and Fourteenth Amendments to attend criminal trials.

There, in apparent reliance on a Virginia statute which empowered a court with discretion to exclude from trial any persons whose presence would impair the conduct of a fair trial so long as their exclusion would not contravene the accused's right to public trial, the trial court had granted a defense motion to exclude the public from the trial. Appellant, Newspaper, intervened and unsuccessfully moved to vacate the closure order, contending that constitutional considerations required that prior to ordering closure, a court must initially find that there were no other less drastic alternatives that would insure a fair trial.

In announcing that the closure order violated the right of access of the public and press to criminal trials granted by the First and Fourteenth Amendments, the court observed:

> "We have no occasion here to define the circumstances in which all or parts of a criminal trial may be closed to the public * * * , but our holding today does not mean that the First Amendment rights of the public and representatives of the press are absolute. Just as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic, * * * so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial. '[T]he question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge . . . the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.' " *Richmond Newspapers, Inc. v. Virginia,* 65 L Ed 2d, at 992 n 18. (Citations omitted.)

which may have been secured in an unjust and illegal manner. * * * " *State v. Osborne, supra,* 54 Or at 294-95.[6]

While the Sixth Amendment and Article I, section 11, guarantees of a public trial are personal to the accused, the mandate of Article I, section 10, of the Oregon Constitution that "[n]o court shall be secret" inures to the benefit of the public and press as well as to the accused. *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 282-85, 613 P2d 23 (1980).

In *State ex rel Oregonian Pub. Co. v. Deiz, supra,* the Supreme Court held ORS 419.498(1), which grants a judge discretion in juvenile proceedings to exclude the public during any portion of the hearing unless the child or parent objects, unconstitutional as applied, under Article I, section 10, of the Oregon Constitution. Although it stated that Article I, section 10, applies to all judicial proceedings, 289 Or at 283, the court specifically noted in its discussion of Article I, section 11, of the Oregon Constitution, that its "holding, however, should not be interpreted as *guaranteeing* the right of public access to all judicial proceedings." 289 Or at 284. (Emphasis supplied.) The court explicitly exempted jury deliberations and conferences of collegial courts from the proscription of Article I, section 10.

■     After reviewing the pertinent cases in this area, we now turn to the statute under constitutional attack. We begin with the presumption that legislative acts are constitutional. *Adm. Vets. Affairs v. U.S. Nat. Bank,* 191 Or 203, 211, 229 P2d 213 (1951).

ORS 163.475 was enacted in 1975 to protect victims of sexual offenses from unnecessary disclosure of their sexual history. *State v. Eggleston,* 31 Or App 9, 12-13, 569 P2d 1088 (1978). The statute was amended to its present form in 1977. Or Laws 1977, ch 822, § 1. As amended, ORS 163.475 creates a rebuttable presumption that complainant's previous sexual conduct is irrelevant. It, however,

---

[6] At the time this case was decided, the Sixth Amendment had not been declared applicable to the states. *State v. Osborne,* 54 Or 289, 292, 103 P 62 (1909).

delineates specific circumstances in which this presumption may be overcome, thereby permitting a defendant to present relevant evidence. ORS 163.475(5); *see State v. Jalo,* 27 Or App 845, 557 P2d 1359 (1977). The 1977 amendment also directs the court to exclude the jury and the public from a hearing held to determine admissibility of evidence regarding complainant's previous sexual conduct. ORS 163.475(4).

As we observed in *State v. Eggleston, supra,* 31 Or App at 12 n 1, over half the states have enacted "rape shield" laws designed to regulate or, in some instances, proscribe the admission of evidence regarding the rape complainant's chastity. Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum L Rev 1, 32, n 196 (1977). Several states have statutory provisions analogous to ORS 163.475(4), directing an *in camera* "sexual conduct" evidentiary hearing.[7] Similarly, Rule 412 of the Federal Rules of Evidence, enacted in 1978, provides for a preliminary hearing in chambers to determine admissibility of "sexual conduct" evidence offered by the defendant.[8] The nature of the in chambers hearing is described in the rule's legislative history as "a proceeding that takes place in the judge's chambers out of the presence of the jury and the general public." 124 Cong. Rec. H11,944 (Oct. 10, 1978) (remarks of Rep. Mann).

---

[7] *E.g.,* Ala. Code (tit. 12), § 21-203 (Supp. 1980); Ga. Code Ann. § 81-1006 (1956); N.M. Stat. Ann. § 30-9-16 (1978); Mich. Comp. Laws Ann. § 750-520j (Supp. 1980); Ohio Rev. Code Ann. §§ 2907.02(D)-(F) (rape), 2907.05(D)-(F) (sodomy) (Page's Supp. 1980); Tex. Penal Code Ann. § 21.13 (Vernon Supp. 1980).

[8] Rule 412 of the Federal Rules of Evidence provides in pertinent part:

" * * * * *

"(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or of assault with intent to commit rape, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is —

[Exceptions listed.]

" * * * * *

"(c)(1) If the person accused of committing rape or assault with intent to commit rape intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the

■ In determining the constitutionality of ORS 163.475(4), it is essential to explore the legislative policy behind this statute. Examination of the relevant legislative history demonstrates that the purpose of the act is to protect the privacy of rape victims and to prevent them from having to recount their entire sexual history in the process of determining whether or not a particular rape occurred. Minutes, House Judiciary Committee, March 22, 1977, pp 6-14; Minutes, House Judiciary Committee, May 10, 1977, pp 1-5. The legislative reports clearly reflect that the legislators, as well as those persons presenting evidence, were concerned about striking a balance between the fair trial rights of the defendant and the privacy rights of the rape victim. *Id.*[9] The legislature specifically addressed the question of whether the provision directing closure of the sexual conduct hearing to the public could withstand constitutional challenge under the Sixth Amendment and Article I, sections 10 and 11. Regarding this issue, Mr. Stephen Kanter, on behalf of the American Civil Liberties Union, testified as follows:

> " * * * if the interest is compelling enough and the deleterious effect is minimal enough on the defendant's right to public trial and the public's right to know, the way they are going they will still have a full blown trial covered by the press and where there's appellate review * * * the Supreme Court will uphold it." Minutes, House Judiciary Committee, March 22, 1977, p 13.

---

date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

"(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subdivision (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. * * *."

[9] *E.g.,* " * * * They are trying to strike a balance between privacy and a right to a fair trial at exactly where the constitution directives prescribe—no more, no less. They want to provide all the privacy the constitution will permit to the victim." Minutes, House Judiciary Committee, May 10, 1977, p 3 (remarks of Rep. Myers).

Similar concerns are apparent in the legislative history surrounding enactment of Rule 412 of the Federal Rules of Evidence. Regarding passage of this rule, Senator Biden testified:

"Rape is one of the most heinous and fastest growing crimes in this country. According to the FBI, since 1962 forcible rapes have increased 62 percent. Yet, rape is also one of the most under-reported violent crimes. Even when the crime is reported victims are often unwilling to proceed with prosecution. * * *

"The rules of evidence used in criminal trials are a major cause of the reluctance of women to report rapes or to participate in the prosecution. * * *

"The enactment of this legislation will eliminate the traditional defense strategy, too often permitted by our laws, of placing the victim and her reputation on trial in lieu of the defendant. This legislation will end the practice, at least in the Federal system, wherein rape victims are bullied and cross-examined about their prior sexual experiences. Indeed, in many cases the victims, no doubt, find the trial almost as degrading as the rape itself.

" * * * * *

"In our zeal to correct this abuse it is important that we keep in mind the constitutional rights of the defendant to a fair trial. Therefore this bill has been carefully drafted to keep the reform within constitutional limits.

"The bill clearly permits the defendant to offer evidence where it is constitutionally required. Indeed, the bill specifically recognizes two circumstances where the evidence may be admitted. However, *the bill also would establish a specific in camera procedure whereby the question of admissibility could be litigated without harm to the privacy rights of the victim or the constitutional rights of the defendant.*" 124 Cong. Rec. S18,580-81, Oct. 12, 1978. (Emphasis supplied.)

Thus, it is evident that, in enacting both the Oregon and the federal statute, the balancing of the privacy rights of the victim and the fair trial rights of the defendant was the paramount interest of the respective legislative bodies. Protection of the rights of privacy of the victim may even approach a concern of constitutional dimension. As one commentator opined:

" * * * [The] introduction of sexual history, arguably impinges upon the victim in ways that differ in kind and

degree from the ordinary rigors of being a witness. For many people (especially, in our society, women) the trauma of baring one's intimate past to the eyes of the world — turning one's bedroom into a showcase — overshadows the usual discomfort of testifying, or having others testify, to one's biases, lies or even convictions of criminal acts. In recent years the Supreme Court has recognized a right of privacy, which is fundamental and cannot be breached except on a show of compelling reasons. First set out in the *Griswold* case, where the Court struck down a criminal ban on the use of contraceptive devices, this shadowy right alluded to by Justice Douglas now finds its roots in the fourteenth amendment and is seen to have 'some extension to activities relating to marriage . . . procreation . . . contraception . . . family relationships . . . and child rearing and education . . . .' * * *.

"* * * Moreover, although the *Griswold* decision defined an area of marital privacy, subsequent cases dealing with birth control and abortion made it clear that the right at issue belonged to single persons as well." Berger, *supra,* 77 Colum L Rev 1, 41-42 (1977) (Footnotes omitted.)

In the present case, we find that the protection of the privacy of a sex crime victim is a justifiable concern of the legislature. Unlike *State v. Osborne, supra,* in which the public was excluded from the trial itself, or *State ex rel Oregonian Pub. Co. v. Deiz, supra,* in which the press was barred from *all hearings.* The period of public exclusion provided in ORS 163.475(4) is narrowly circumscribed and does not exceed the scope necessary to achieve its legitimate legislative purpose. Rather than contravening the rights of the accused, ORS 163.475(4) represents a compromise resolution of the problem. As cogently reasoned by Professor Berger:

"Although the defendant might wish to focus the eyes of the world on the process of determining admissibility, one must recall that the hearing focuses not on the actual events at issue but only on proof of the victim's prior sexual history. The latter will frequently be less central to the case than the woman's version of the claimed attack or tangible evidence, confessions or identifications — the stuff of traditional suppression hearings. Moreover, the defendant has less to fear and the public less genuine need to observe when a judge is ruling on ordinary evidentiary

questions, and not on the legality of actions of law enforcement officials, themselves frequently shrouded in secrecy and targets of special community concern.

"Most important, however, the state has a clearly stronger interest in closing the hearing on admissibility than in cordoning off the actual trial. Its purpose here is not to protect the victim of rape from exposure of presumptively relevant proof but to screen out, and shield against, revelation of facts that can only smear. If the very hearing on admissibility can be turned into a three-ring circus, lacking only the presence of jurors, one might as well scuttle the rape shield statutes and abandon the hope of protecting complainants and encouraging victim cooperation in bringing suspected assailants to trial. The Constitution does not demand, and no proper policy counsels, a sacrifice of such dimensions. The new laws with their screening procedures can serve both public and private interests in a fairer and less objectionable manner than statutes or judicial rulings closing trials to the general public. Nothing in the Bill of Rights compels that the price of invoking judicial processes, even of accusing a man of rape, be *total* loss of private life — no matter how little it bears on the charge or how much its exposure harms the complainant." Berger, *supra,* 77 Colum L Rev 1, 95-96.

■ Under the Oregon rape shield statute, defendant's right to a public trial is not infringed upon impermissibly. The hearing is a preliminary one and is conducted only to exclude from the trial that which is irrelevant to the proceeding. Relevancy is a minimal standard, and it does not unduly restrict the right to a public trial to insist that what is made public in the trial bear in some relevant way upon the issues. Under the rules of evidence, that which is irrelevant should not be heard at all. That which is relevant will be heard in the public trial. In the *in camera* hearing, a record may be made permitting appellate review of any errors made on the question of admissibility. If an incorrect ruling is made excluding relevant evidence of the victim's prior sexual conduct, the appellate process will deal with that. The defendant is thus insured that he will ultimately have the use of all relevant evidence of the victim's prior sexual conduct in a full public trial. This is all that he is entitled to under Article I, section 11, of the Oregon Constitution. The constitutional right to a public trial does not include the right to smear the victim with

irrelevancies. The minimal inconvenience to the defendant is, on the other hand, greatly overbalanced by the protection of the rape victim from herself being "placed on trial" as to matters not helpful or relevant to the defendant's legitimate defenses, and as to which matters neither the jury nor the public has a proper concern to hear during the course of the defendant's trial.

Defendant's sole contention here has been that the rape shield statute is unconstitutional. He does not contend that any rulings made during the *in camera* hearing were erroneous.

█ We hold that the exclusion of the public during the preliminary sexual conduct hearing did not violate defendant's right to a public trial.

Affirmed.

**WARDEN, J.,** specially concurring.

I join in the majority opinion. Because I believe the dissent misperceives the function of ORS 163.475(4), I add a few words.

Article I, section 10, of the Oregon Constitution addresses the public's interest in the fair administration of justice in all cases, whether criminal or civil. As Chief Justice Denecke said in *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980), it "does not provide that the accused or anyone else has the right to a public trial." Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution provide the public trial guarantees for criminal defendants. The dissent would give a criminal defendant additional benefits of Article I, section 10. It would allow the defendant to wrap himself in the protective cloth of public interest and would extend that benefit unduly. Giving the defendant the public's right would pervert, rather than enhance, the public's interest in the fair administration of justice.

The privacy provided by ORS 163.475(4) facilitates the fair administration of justice in the prosecution of sex crimes under ORS 163.355 to 163.425. It promotes the goal of fair trials. Publicity would impede achievement of that goal. Without that privacy, prosecution of forcible rape and

other sex crimes would be seriously hampered. Some victims, it may fairly be said, would decline to complain or to testify, knowing that, if they did, they could be compelled to relate in detail the prior sexual experiences of their lifetimes, both marital and extramarital. Though it may sound paradoxical, the right of the public in these cases to the open administration of justice requires closed hearings, as provided in ORS 163.475(4). Surely, the public's interest is not a prurient one.

The hearing provided for in ORS 163.475(4) and defendant's right to such a hearing is, I believe, most properly perceived as a discovery proceeding and not as part of the trial. As such, it is not violative of Article I, section 10, of the Oregon Constitution in providing a private hearing, as the dissent would have us hold. The evidence adduced in such a hearing, except such as is admissible in trial, should be no more open to public scrutiny than is evidence which is discoverable pursuant to ORS 135.815 to 135.845. Article I, section 10, applies to civil as well as criminal cases.

I concur.

**JOSEPH, P.J.,** dissenting.

Because I believe that that part of the majority opinion which denies defendant's challenge to the constitutionality of ORS 163.475(4) is wrong, I dissent. It does not do to cite cases and other authorities (53 Or App at 911) which pre-date *Gannett Co. v. De Pasquale,* 443 US 368, 99 S Ct 2898, 61 L Ed 2d 608 (1979), and *Richmond Newspapers, Inc. v. Virginia,* 448 US 555, 100 S Ct 2814, 65 L Ed 2d 973 (1980), especially when it is the *defendant* who is asserting his right to a public trial. It also does not do to use *Gannett against* the defendant's right — or to ignore the thrust of *Richmond Newspapers* entirely. Even more critical is that the majority refuses to read *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980), for what it does say and, instead, chooses to expand *dicta* about jury deliberations and conferences of collegial courts to sustain a holding that is totally in conflict with *Deiz.* (53 Or App at 914.)

What is particularly painful about the majority opinion is this sentence (53 Or App at 919-20): "The constitutional right to a public trial does not include the right to smear the victim with irrelevancies." Of course not! But that is not even close to the issue. The issue is whether a *privilege* granted by a badly flawed[1] statute is superior to an extremely valuable *constitutional right.* The majority says yes, and I dissent.

---

[1] *See State v. Jalo,* 27 Or App 845, 557 P2d 1359, *rev den* (1977); *State v. Lantz,* 44 Or App 695, 607 P2d 197, *rev den,* 289 Or 275 (1980).