Argued and submitted June 11, affirmed August 20, reconsideration denied
October 31, petition for review allowed November 20, 1986 (302 Or 299)

OREGONIAN PUBLISHING COMPANY et al,
*Appellants,*

*v.*

O'LEARY,
*Defendant,*

SAMS et al,
*Respondents.*

(85-1-108; CA A36591)

724 P2d 822

Charles F. Hinkle, Portland, argued the cause for appellants. With him on the briefs were Robert S. Sola and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Kendall M. Barnes, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs commenced this declaratory judgment action for a declaration that ORS 136.617 violates the state and federal constitutions. The trial court granted defendants' motion for summary judgment, ruling that the statute is constitutional. Plaintiffs appeal and argue that the statute is facially invalid.[1]

This action had its genesis in a July, 1984, murder trial in Clackamas County. The state called a witness who refused to testify on the ground that he might incriminate himself. The state moved for an order compelling the witness to testify and the presiding judge, Sams, held a summary hearing to rule on the validity of the claim of privilege. The hearing was held pursuant to ORS 136.617:

> "In any criminal proceeding before a court of record or in any proceeding before a grand jury, or in any proceeding before a court of record under ORS 646.760, if a witness refuses to testify or produce evidence of any kind on the ground that the witness may be incriminated thereby, the prosecuting attorney may move the court to order the witness to testify or produce evidence. The court shall forthwith hold a summary hearing at which the prosecuting attorney shall show reasonable cause to believe the witness possesses knowledge relevant to the proceeding, or that no privilege protects the evidence sought to be produced. The witness may show cause why the witness should not be compelled to testify or produce evidence. The court shall order the witness to testify regarding the subject matter under inquiry upon such showing of reasonable cause or shall order the production of evidence upon a finding that no privilege protects the evidence sought, unless the court finds that to do so would be clearly contrary to the public interest. *The court shall hold the summary hearing outside the presence of the jury and the public* and may require the prosecuting attorney to disclose the purpose of the testimony or evidence. The witness shall be entitled to be represented by counsel at the summary hearing." (Emphasis supplied.)

Plaintiff Laatz, a reporter for plaintiff Oregonian

---

[1] Plaintiffs also sought a declaration that their exclusion from the hearing violated their constitutional rights. The trial court ruled against them on that claim, and they do not assign error to the ruling. Plaintiffs also assign error to the trial court's granting defendant Sams' motion to dismiss the action as to him. Because of our disposition, we need not reach the assignment.

Publishing Company, requested permission to attend the hearing. Judge Sams orally refused the request, relying on the italicized portion of ORS 136.617. At the summary hearing on July 20, 1984, no member of the public was permitted to attend.

Plaintiffs filed an alternative writ of mandamus in the Supreme Court on July 27, 1984. The Supreme Court issued the alternative writ, and Judge Sams responded by filing a certificate of compliance with the writ in which he stated that he had made no written orders excluding the public from the July 20, hearing or refusing to release a transcript of the hearing to the public or press and that he had informed the plaintiffs that the oral rulings he had made were no longer in effect. The Supreme Court dismissed the writ on the ground that the judge had complied with one of the alternatives commanded by the writ. *State ex rel Oregonian Publishing Co. v. Sams,* 298 Or 329, 692 P2d 116 (1984). The Supreme Court declined to reach the issue of the validity of ORS 136.617, suggesting that a declaratory judgment action might be an appropriate vehicle to raise that question. Plaintiffs subsequently commenced this action.

Plaintiffs challenge the portion of ORS 136.617 which states that "[t]he court shall hold the summary hearing outside the presence of the * * * public," as violating Article I, § 10, of the Oregon Constitution[2] and the First Amendment to the United States Constitution.[3] We consider the claim under the state constitution first.

The leading Oregon case concerning the right of the press to attend judicial proceedings is *State ex rel Oregonian Publishing Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980), a mandamus proceeding to compel a judge to permit the press to attend all hearings in a juvenile court proceeding. The judge had denied the plaintiffs' motion to attend the hearings in the juvenile proceeding and had indicated her intent to bar the press from all future hearings in the case, relying on *former*

---

[2] Oregon Constitution, Article I, § 10, provides, in pertinent part:

"No Court shall be secret, but justice shall be administered openly * * *."

[3] The First Amendment provides, in pertinent part:

"Congress shall make no law * * * abridging the freedom of speech, or of the press * * *."

ORS 419.498(1). The Supreme Court held that the order of the court excluding the press from all of the hearings violated Article I, § 10. The opinion also cautioned that "[o]ur holding, however, should not be interpreted as guaranteeing the right of public access to all judicial proceedings." 289 Or at 284. The court listed "jury deliberations and court conferences" as two examples of judicial proceedings which could be held in private because of "well established * * * tradition." 289 Or at 284.

*Deiz* was followed by our opinion in *State v. Blake,* 53 Or App 906, 633 P2d 831 (1981), *petition dismissed* 292 Or 486, 640 P2d 605 (1982). The defendant in *Blake* challenged the constitutionality of *former* ORS 163.475(4), which provided that a hearing to determine the admissibility at trial of a victim's prior sexual conduct "shall [be] conduct[ed] * * * out of the presence of the jury and the public * * *." The defendant claimed that the provision excluding the public from the hearing violated his right to a public trial under the Oregon Constitution, Article I, § 11, and the Sixth Amendment, as well as the mandate of Oregon Constitution, Article I, § 10, that "[n]o court shall be secret * * *." We upheld the statute. We held

"* * * that the protection of the privacy of a sex crime victim is a justifiable concern of the legislature [and that t]he period of public exclusion provided in ORS 163.475(4) is narrowly circumscribed and does not exceed the scope necessary to achieve its legitimate legislative purpose. * * *" 53 Or App at 918.

We distinguished *State ex rel Oregonian Publishing Co. v. Deiz, supra,* in which the press was barred from all hearings. We also justified the statute on the ground that the defendant's right to a public trial and the public's right to open courts only encompass the right of public access to relevant and admissible evidence.

"* * * The hearing is a preliminary one and is conducted only to exclude from the trial that which is irrelevant to the proceeding. Relevancy is a minimal standard, and it does not unduly restrict the right to a public trial to insist that what is made public in the trial bear in some relevant way upon the issues. Under the rules of evidence, that which is irrelevant should not be heard at all. That which is relevant will be heard in the public trial. In the *in camera* hearing, a record may be

made permitting appellate review of any errors made on the question of admissibility. If an incorrect ruling is made excluding relevant evidence of the victim's prior sexual conduct, the appellate process will deal with that. The defendant is thus insured that he will ultimately have the use of all relevant evidence of the victim's prior sexual conduct in a full public trial. This is all that he is entitled to under Article I, section 11, of the Oregon Constitution. The constitutional right to a public trial does not include the right to smear the victim with irrelevancies. * * *" 53 Or App at 919-20.[4]

What we said in *Blake* applies with equal force to hearings under ORS 136.617, which protects witnesses from disclosing to the public information which may incriminate them, and that information is certainly entitled to the same secrecy as the rape victim's sexual history. The public does not have a right to hear testimony which is protected and which the state cannot compel. Also, as in *Blake,* the closed summary hearing is a narrowly circumscribed vehicle for determining the existence of the right and compelling testimony if no right exists or giving the witness immunity under ORS 136.619. After an ORS 136.617 hearing, testimony which is not protected or which is immunized will be made public when the witness testifies at trial. We conclude that ORS 136.617 is valid under Article I, § 10.

The United States Supreme Court has declared in several cases that the press may have a qualified right to attend judicial proceedings. The leading case is *Richmond Newspapers, Inc. v. Virginia,* 448 US 555, 100 S Ct 2814, 65 L Ed 2d 973 (1980), which held that, under the First Amendment, a state could not close an entire criminal trial to the public and the press. In guaranteeing a right of access to criminal trials in general, the Court also stated:

"We have no occasion here to define the circumstances in which all or parts of a criminal trial may be closed to the public * * * but our holding today does not mean that the First Amendment rights of the public and representatives of the press are absolute. * * *" 448 US at 581 n 18. (citation omitted.).

---

[4] The Supreme Court dismissed the petition for review in *Blake,* because the statute had been amended to provide for a hearing "in chambers." The rule is currently codified as OEC 412(3)(b), and the provision for a hearing "in chambers" has not been challenged in any reported case.

In *Globe Newspaper Co. v. Superior Court,* 457 US 596, 102 S Ct 2613, 73 L Ed 2d 248 (1982), the Court invalidated a Massachusetts statute which required exclusion of the public from the courtroom in sex crime trials during the testimony of minor victims. Reiterating the holding of *Richmond* that the right of access to criminal trials is not absolute, the Court stated:

"\* \* \*[T]he circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive *information, it must be shown that the denial is necessitated* by a compelling governmental interest, and is narrowly tailored to serve that interest. \* \* \*" 457 US at 606-07.

In applying the first part of the test, the Court agreed that the state's interest in "safeguarding the physical and psychological well-being of a minor" by relieving the minor of the need to testify in public is compelling. 457 US at 607. The Court concluded that the mandatory denial of access to the victim's in-court testimony was broader than necessary to serve the state's interest:

"\* \* \* [I]t does not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest. A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim and the interests of parents and relatives. Section 16A, in contrast, requires closure even if the victim does not seek the exclusion of the press and general public, and would not suffer injury by their presence. In the case before us, for example, the names of the minor victims were already in the public record, and the record indicates that the victims may have been willing to testify despite the presence of the press. If the trial court had been permitted to exercise its discretion, closure might well have been deemed unnecessary. In short, § 16A cannot be viewed as a narrowly tailored means of accommodating the State's asserted interest: That interest could be served just as well by requiring the trial court to determine on a case-by-case basis whether the State's legitimate concern for the well-being of the minor victim necessitates closure. Such an approach ensures that the constitutional right of the press and public to gain access to criminal trials will not be

restricted except where necessary to protect the State's interest." 457 US at 608-09. (Emphasis in original; footnotes omitted.)

■     Plaintiffs argue that *Globe* compels us to hold that ORS 136.617 is invalid, because it requires, in mandatory language, that the public be excluded from the summary hearing.[5] We do not think that *Globe* requires that result. The statute at issue there is distinguishable from ORS 136.617 in two significant respects. First, it excluded the public from trial testimony in the courtroom, where the public has a traditional right to be present. ORS 136.617 excludes the public only from an *in camera* hearing to determine the validity of a claimed privilege. The public does not have a traditional right to be present at such hearings.[6] Second, the interests of the wit-

---

[5] Defendants argue that we should construe the language of ORS 136.617 to permit, rather than to require, the trial court to exclude the public from the hearing. We do not think that the mandatory language of the statute, "The court shall hold the summary hearing outside the presence of the jury and the public," can be construed as merely permissive.

[6] In *Press-Enterprise Co. v. Superior Court*, 464 US 501, 104 S Ct 819, 78 L Ed 2d 629 (1984) (*Press Enterprise I*), the Supreme Court again focused on the long tradition of public selection of jury members to hold that the press has a First Amendment right to attend *voir dire* in a criminal trial. The Court acknowledged that the state may have a compelling interest in protecting the privacy of potential jurors but held that almost complete closure of the *voir dire* proceedings was not sufficiently narrowly tailored so as to protect that interest. Significant to this case is the Court's suggestion that a prospective juror who has a problem with public questioning "may properly request an opportunity to present the problem to the judge in camera" so that the judge "can ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy" before closing the proceeding to the press. 464 US at 512. Such a request by a juror for an in camera *voir dire* is analogous to a summary hearing to determine a witness' constitutional right.

In *Seattle Times Co. v. Rhinehart,* 467 US 20, 104 S Ct 2199, 81 L Ed 2d 17 (1984), the Supreme Court also focused on whether a judicial proceeding was traditionally open to the public to determine the existence of a First Amendment right of access. The Court held that a newspaper which was a party to civil litigation did not have a First Amendment right to publish or disseminate information obtained through discovery, because "[s]uch proceedings were not open to the public at common law * * *." 467 US at 33.

"* * * Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, *but not yet admitted,* information are not a restriction on a traditionally public source of information." 467 US at 33.

It appears from those cases that a common thread concerning the existence of a qualified right of public access to judicial proceedings is a determination of whether such proceedings were traditionally open to the public. *Press-Enterprise Co. v. Superior Court,* ____ US ____, 106 S Ct 2735, ____ L Ed 2d ____ (1986), (*Press-Enterprise II*) discussed *infra,* further amplifies the relevance of this determination.

nesses in the two cases differ. In *Globe,* the Court concluded that closure of the court may not be necessary to protect some minor victims from embarrassment and trauma. The Court noted that the record showed that some of the victims in that case might, in fact, have been willing to testify in front of the press. The interest protected by ORS 136.617, although not necessarily more important than that at issue in *Globe,* is different. By claiming the constitutional right not to incriminate himself, a witness specifically *does* object to testifying in public as to certain facts. ORS 136.617 reflects the legislature's determination that a witness asserting the right *ipso facto* has a strong interest in not exposing in public the potentially incriminating nature of his testimony. The mandatory closed hearing under the statute is necessitated by the state's interest in testing *and* protecting the witness' right and is narrowly tailored to protect that interest.

The Supreme Court recently distilled this line of authority into a two-step analysis in *Press-Enterprise Co. v. Superior Court,* ___ US ___, 106 S Ct 2735, ___ L Ed 2d ___ (1986) (*Press-Enterprise II, supra* n 6). The first step is a two-part test to determine if the press has a qualified First Amendment right of access to a judicial proceeding: first, "whether the place and process has historically been open to the press and general public," and, second, "whether public access plays a significant positive role in the functioning of the particular process in question." ___ US at ___ (54 USLW at 4871). If those two questions are answered in the affirmative, the press has a qualified right of access which must then be weighed against the defendant's or a witness' interest in closing the proceeding in the second step of the analysis. "[T]he proceedings cannot be closed unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' *See Press-Enterprise I, supra; Richmond Newspapers, supra* 448 US at 581." ___ US at ___ (106 S Ct at 2743).

At issue in *Press-Enterprise II* was whether the press

---

The analysis is also significant to the Oregon cases. *See State ex rel Oregonian Pub. Co. v. Deiz, supra,* 289 Or at 284. Plaintiffs do not assert a right based on any long standing tradition of public access to *in camera* hearings. In fact, as we discuss, such hearings are traditionally closed to the jury and to the public.

has a First Amendment right of access to the transcripts of a 41-day preliminary hearing in a criminal prosecution. Applying the first step of the test, the Court found that "there has been a [nationwide] tradition of accessibility to preliminary hearings of the type conducted in California" and that "public access to preliminary hearings as they are conducted in California plays a particularly significant positive role in the actual functioning of the process." ___ US at ___ (106 S Ct at 2742). That second conclusion was based on the finding that preliminary hearings to determine probable cause to bind a defendant over for trial "are sufficiently like a trial" so as to benefit from public scrutiny in terms of the actual and perceived fairness of the criminal justice system. ___ US at ___ (106 S Ct at 2742). Answering both parts of the first step of its test in the affirmative, the Court held "that the qualified First Amendment right of access to criminal proceedings applies to preliminary hearings as they are conducted in California." ___ US at ___ (106 S Ct at 2743).

The Court then balanced the press' right of access against the defendant's right to a fair trial and concluded that the "risk of prejudice [to the defendant's right] does not automatically justify refusing public access to hearings on every motion to suppress." ___ US at ___ (106 S Ct at 2744).

> "* * * If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's free trial rights. * * *" ___ US at ___ (106 S Ct at 2743).

■ We apply *Press-Enterprise II* to determine whether there is a qualified right of access. We first note that summary hearings to determine a witness' right not to testify, usually held in the judge's chambers, traditionally have not been open to the public. In fact, they have been closed to the press and the public by long-standing tradition. Second, we do not think that allowing public access to summary hearings would play a significant positive role in the functioning of the hearing. In fact, we think that public access would have a negative impact on the hearing. A summary hearing differs from a preliminary hearing in that it is brief and is held to determine the validity

of a witness' claimed right to refuse to disclose to anyone what he knows. It is also unlike the 41-day preliminary hearing in *Press-Enterprise II* in that it does not necessarily bring forth facts which bear upon a defendant's guilt or innocence or on the state's decision to bring a defendant to trial. For these reasons, public access to the hearing is not necessary to ensure that significant decisions are subject to public scrutiny. Neither would public access enhance the functioning of the hearing. When a witness asserts the right not to incriminate himself, he would likely be less open to the court's exploring the validity of his right if the press and public are present. Excluding the press and public from the hearing ensures that the witness' constitutional right, if any, is protected until it is determined not to exist or he is granted immunity. For these reasons, we do not think that the press has even a qualified right of access to the summary hearing.

Assuming that the press *does* have a qualified right of access, we think that the witness' interest in not revealing to the public potentially incriminating information justifies the mandatory closure of the summary hearing. The constitutional right not to incriminate oneself is different from a defendant's right to a fair trial asserted in *Press-Enterprise II*. There, the Supreme Court held that a defendant's right to a fair trial did not necessarily require closure of preliminary hearings in every case, because

> "[t]hrough *voir dire,* cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict. * * *" ___ US at ___ (106 S Ct 2744).

In contrast, a witness' right, Article I, § 12, protects him from public disclosure of incriminating information. Assertion of the right necessarily requires a closed hearing to determine its validity. For this reason, we conclude that *Press-Enterprise II* does not require us to invalidate the closed hearing provision of ORS 136.617.

Affirmed.