Argued and submitted January 20, Court of Appeals reversed and case remanded
April 28, 1987

# OREGONIAN PUBLISHING COMPANY et al,
*Petitioners on Review,*

*v.*

# O'LEARY,
*Defendant,*

# SAMS et al,
*Respondents on Review.*

# (TC 85-1-108; CA A36591; SC S33348)

736 P2d 173

Charles F. Hinkle, Portland, argued the cause for petitioners on review. With him on the petition were E. Walter

Van Valkenburg and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Kendall M. Barnes, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the memorandum response were Dave Frohnmayer, Attorney General, Virginia Linder, Solicitor General, and David Schuman, Assistant Attorney General, Salem.

Marc D. Blackman, Portland, filed a brief *amicus curiae* on behalf of ACLU Foundation of Oregon, Inc. With him on the brief was Ransom, Blackman & Simson, Portland.

LENT, J.

**LENT, J.**

The plaintiffs seek a declaration that the closed hearing provision of ORS 136.617 violates Article I, section 10, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution.[1] The circuit court and the Court of Appeals held that the provision was consistent with both constitutions. *Oregonian Publishing Co. v. O'Leary,* 80 Or App 754, 724 P2d 822 (1986). We hold that it violates Article I, section 10, of the Oregon Constitution and reverse.

### I.

Plaintiff Oregonian Publishing Co. publishes The Oregonian, a daily newspaper based in Portland and widely distributed throughout Oregon. A reporter for The Oregonian, plaintiff Laatz, covered a Clackamas County murder trial over which the defendant judge presided. During the trial a witness called by the prosecution refused to testify on the ground that

---

[1] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

ORS 136.617 provides:

"In any criminal proceeding before a court of record or in any proceeding before a grand jury, or in any proceeding before a court of record under ORS 646.760, if a witness refuses to testify or produce evidence of any kind on the ground that the witness may be incriminated thereby, the prosecuting attorney may move the court to order the witness to testify or produce evidence. The court shall forthwith hold a summary hearing at which the prosecuting attorney shall show reasonable cause to believe the witness possesses knowledge relevant to the proceeding, or that no privilege protects the evidence sought to be produced. The witness may show cause why the witness should not be compelled to testify or produce evidence. The court shall order the witness to testify regarding the subject matter under inquiry upon such showing of reasonable cause or shall order the production of evidence upon a finding that no privilege protects the evidence sought, unless the court finds that to do so would be clearly contrary to the public interest. *The court shall hold the summary hearing outside the presence of the jury and the public* and may require the prosecuting attorney to disclose the purpose of the testimony or evidence. The witness shall be entitled to be represented by counsel at the summary hearing." (Emphasis added.)

An ORS 136.617 hearing can occur in three types of proceedings: criminal proceedings before a court of record, grand jury proceedings, and civil proceedings before a court of record under ORS 646.760 for the violation of certain trade regulations. The hearings at issue in this case are those occurring during a criminal proceeding before a court of record. We do not address the constitutionality of the closed hearing provision as it relates to grand jury proceedings or proceedings under ORS 646.760.

his testimony would be self-incriminating. The prosecutor moved the court for an order compelling the witness to testify, and, as required by ORS 136.617, the judge immediately held a summary hearing on the motion. Laatz requested permission to attend the hearing, but the judge excluded her and other members of the public, relying on the following portion of ORS 136.617: "The court shall hold the summary hearing outside the presence of the jury and the public * * *."

The plaintiffs filed this action for a declaratory judgment that the judge's closure of the courtroom, and the closed hearing provision of ORS 136.617 on which he relied in doing so, violated Article I, section 10, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution.[2] Named as defendants were the judge, the State of Oregon and James O'Leary, the District Attorney for Clackamas County. The circuit court granted motions to dismiss by the judge and O'Leary, but denied a similar motion by the state. On the merits, the court granted the state's motion for summary judgment.

The plaintiffs appealed, assigning as error the circuit court's failure to declare the closed hearing provision of ORS 136.617 unconstitutional and the court's dismissal of their claims against the judge. The Court of Appeals held that the statute was constitutional and affirmed. For that reason, the Court of Appeals found it unnecessary to decide whether the claims against the judge were properly dismissed. 80 Or App at 756 n 1. The plaintiffs petitioned for review, urging that we reverse the Court of Appeals and remand the case to that court for a determination of the plaintiffs' remaining assignment of error and their request for attorney fees.

---

[2] The plaintiffs pled two claims for relief. The first was based on the Oregon Declaratory Judgment Act, ORS 28.010 to 28.150. The second, against defendants O'Leary and the judge, was based on the federal civil rights statute, 42 USC § 1983. The plaintiffs also sought attorney fees under *Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975), and 42 USC § 1988.

The action was filed as a class action, the plaintiff class consisting of all residents of Oregon, but apparently no determination by the circuit court that it could be so maintained has yet been made. *See* ORCP 32C(2).

## II.

Article I, section 10, of the Oregon Constitution provides:

"*No court shall be secret, but justice shall be administered, openly* and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." (Emphasis added.)

Section 10 thus mandates "not only honest and complete and timely justice, but justice that can be seen to be so during and after the event." *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 286, 613 P2d 23 (1980) (Linde, J., concurring).[3] Moreover, the command that "[n]o court shall be secret" is not a statement of an individual right that may be waived or compromised by the individual. *Deiz,* 289 Or at 282-83. Members of

---

[3] The probable genesis of section 10 was Article 40 of the Magna Carta: *"Nulli vendemus, nulli negabimus, aut differemus, rectum aut justiciam."* (To no one will we sell, to no one will we deny, or delay, right or justice.) Linde, *Without "Due Process,"* 49 Or L Rev 125, 138 (1970). Article 40 primarily was intended to curb King John's excessive marketing of royal writs. *See* McKechnie, Magna Carta 459-63 (1905). In his *Second Institute,* Lord Coke transformed this modest objective into a guarantee of equal access to justice for redress of legal wrongs. *See* Schuman, *Oregon's Remedy Guarantee: Article I, Section 10 of the Oregon Constitution,* 65 Or L Rev 35, 38-39 (1986). Coke strongly influenced colonial American legal thinking, and his interpretation of Article 40 was the source of "remedy" guarantees in early state constitutions. *Id.* For example, Article 9, section 11, of the Pennsylvania Constitution of 1790 provided:

"That all courts shall be open, and every man, for an injury done him in his lands, goods, person, or reputation, shall have remedy by the due course of law, and right and justice administered without sale, denial, or delay."

8 Swindler, Sources and Documents of U.S. Constitutions 293 (1979). Nearly identical language found its way into Article I, section 12, of the Indiana Constitution of 1851, on which Article I, section 10, of the Oregon Constitution was based. Palmer, *The Sources of the Oregon Constitution,* 5 Or L Rev 200, 201 (1926).

Article 40 did not proscribe secret court proceedings, and the word "open" in early American state constitutions may have merely meant access by litigants to legal redress in the courts, not public access to observe court proceedings. *But cf.* Concessions and Agreement of West New Jersey ch XXIII (1677) ("That in all publick courts of justice for tryals of causes, civil or criminal, any person or persons, inhabitants of the said Province may freely come into, and attend the said courts, and hear and be present, at all or any such tryals as shall be there had or passed, that justice may not be done in a corner nor in any covert manner * * *.") (quoted in 6 Swindler, *supra,* at 408). Article I, section 10, of the Oregon Constitution, however, is unambiguous, requiring that "justice shall be administered, openly" and emphasizing that "[n]o court shall be secret." Whether the framers of our constitution added this requirement of public access by conscious design or because they read "open" in the Indiana Constitution to mean "not secret," *see* Schuman, *supra,* at 38, we cannot read section 10 so narrowly.

the media and public may benefit from, and assert in court in their own behalf, the prohibition of section 10 on secret courts, but the prohibition is not a right that is personal to themselves. Rather, it "is one of those provisions of the constitution that prescribe how the functions of government shall be conducted." *Deiz,* 289 Or at 288 (Linde, J., concurring).

■     Section 10 is written in absolute terms; there are no explicit qualifications to its command that justice shall be administered openly. In order to be constitutional, a proceeding must either not be secret or not "administer justice" within the meaning of section 10.

■     There can be little doubt that an ORS 136.617 hearing is "secret" within the meaning of section 10 and that it must be so under the terms of the statute. Once a witness has refused to testify on the ground of self-incrimination and the prosecutor has moved to compel the witness to testify, the statute provides that "[t]he court *shall* hold the summary hearing outside the presence of * * * the public." (Emphasis added.) There are no circumstances, including the consent of the parties and the witness, under which the court could permit the public to be present at the hearing. Nor can the constitutional requirement of openness be satisfied by making a hearing transcript publicly available at some time after the hearing, as the judge apparently did in this case.[4] The command of section 10 would be ill-served by a practice in which the public had to rely on the court itself to learn in what manner justice was administered. Moreover, because many court proceedings are of immediate public importance, an after-the-fact account will rarely be an adequate substitute for contemporaneous knowledge.[5]

The question before us, then, is whether an ORS

---

[4] *Cf. State ex rel KOIN-TV v. Olsen,* 300 Or 392, 410, 711 P2d 966 (1985) (television station not entitled under section 10 to copy a videotaped deposition played in open court).

[5] The exclusion of any particular member of the media or public, however, does not necessarily make the proceeding secret. The requirement that justice be administered openly is not a personal right of everyone who wishes to attend. Persons may be excluded for good cause, such as overcrowding or disruption of the proceedings. *See Deiz,* 289 Or at 285. Good cause, of course, does not include exclusion for particular views on the matter at issue or exclusion because of fears that that which is being "openly administered" may be disclosed by the person excluded. *See Deiz,* 289 Or at 290 (Linde, J., concurring).

136.617 hearing is an administration of justice within the meaning of section 10. Although section 10 is written in absolute terms, not every proceeding involving the administration of justice, in the general sense of that term, need be open to the public. *See Deiz,* 289 Or at 284.

■     The primary limitation on the scope of section 10 is that it is directed only at adjudications. To the extent that adjudications are not involved, the administration of justice is not governed by it. Section 10, for example, does not require that police investigations of crime, although a part of the administration of justice, be open to public scrutiny. In addition, this court has noted that judicial proceedings that were closed to the public by well-established tradition at the time of the adoption of the Oregon Constitution may be exceptions to section 10. *Deiz,* 289 Or at 284 (jury deliberations and collegial court conferences are historical exceptions to the command of section 10 that justice be administered openly).

■     We are not persuaded, however, that an ORS 136.617 hearing is a proceeding that falls outside the scope of section 10. The fundamental function of courts is to determine legal rights based upon a presentation of evidence and argument. At an ORS 136.617 hearing, the prosecution must show "reasonable cause to believe the witness possesses knowledge relevant to the proceeding, or that no privilege protects the evidence sought to be produced." The witness may be heard in opposition. Additionally, even if the prosecution makes the necessary showing, the court may refuse to compel the witness to testify if it "finds that to do so would be clearly contrary to the public interest." Whether a witness will be compelled to testify has an important effect on any trial, and the immunity that follows as a consequence of compelling testimony, *see* ORS 136.619, may be of greater concern than the trial itself. The reasons for opening trials to public scrutiny would appear to be equally applicable to an ORS 136.617 hearing.

The Court of Appeals, taking its cue from this court's opinion in *Deiz,* suggested that section 10 was inapplicable because an ORS 136.617 hearing is an *in camera* hearing, and such hearings traditionally have been closed to the public. *See* 80 Or App at 761. We have not been made aware, however, of any well-established tradition in 1859 to close the sort of hearing mandated by ORS 136.617. It is not enough to observe

that *in camera* hearings traditionally have been closed to the public. Such hearings are closed by definition, not tradition.

■ Moreover, tradition, in and of itself, is never dispositive. A well-established tradition of exclusion from a particular proceeding is simply evidence that the framers of the Oregon Constitution did not intend to treat that proceeding as an administration of justice within the meaning of section 10. Even if there were a tradition of excluding the public from hearings such as that required by ORS 136.617, the tradition would be meaningless without the further conclusion that the framers intended the tradition to persist in the face of the constitutional command of section 10. *Cf. Deiz,* 289 Or at 283-84 (contemporaneous legislative enactments should not necessarily be given much weight when construing constitutional provisions). We have been presented with no reason to believe that they did so.

The Court of Appeals also based its decision on its conclusion that "the public's right to open courts only encompass[es] the right of public access to relevant and admissible evidence." 80 Or App at 758 (citing *State v. Blake,* 53 Or App 906, 919-20, 633 P2d 831 (1981)). Under this analysis, an ORS 136.617 hearing may be secret because the trier of fact is not entitled to consider testimony and arguments presented at the hearing.

■ The premise of the limitation of public access to the presentation of admissible evidence is that the public has an interest only in the evidence actually considered by the trier of fact in arriving at a decision. But the importance of visibility in the administration of justice goes far beyond the presentation of admissible evidence at trial. Open justice "serves to assure accountability for the charge not prosecuted, the reduced plea accepted, the evidence used or not used." *See Deiz,* 289 Or at 289 (Linde, J., concurring). There is nothing in section 10 or this court's prior decisions to suggest that public access should be limited to the presentation of admissible evidence.

■ Finally, the principal rationale upon which the Court of Appeals appears to have rested its decision was a balancing of the command of section 10 against the witness's "secrecy" interest in not disclosing incriminating information. This

interest, together with the "narrowly circumscribed" nature of the hearing, was said to justify closure. *See* 80 Or App at 759.

Any secrecy interest the witness may have in not disclosing incriminating information is not of a constitutional dimension. The right against self-incrimination has nothing to do with secrecy; the state can compel testimony from the witness so long as immunity or some other acceptable substitute is provided. *See State v. Soriano,* 68 Or App 642, 684 P2d 1220 (1984), *opinion adopted,* 298 Or 392, 693 P2d 26 (1984). If the witness has a secrecy interest at all, it must be found in the closed hearing provision of ORS 136.617 itself.

■ ■ But even assuming that the witness has a secrecy interest, it cannot limit the unqualified command of section 10 that justice shall be administered openly. The government cannot avoid a constitutional command by "balancing" it against another of its obligations. *See* Linde, *Fair Trials and Press Freedom—Two Rights Against the State,* 13 Will LJ 211 (1977); *see also Federated Publications, Inc. v. Kurtz,* 94 Wash 2d 51, 615 P2d 440, 449 (1980) (Dolliver, J., dissenting). In this instance, the government cannot create a secret court by pleading that it must act in secret in order to avoid infringing the witness's secrecy interest or constitutional right against self-incrimination. Both obligations must be satisfied, and if both cannot be satisfied, the government must act so as not to create the conflict. Either the hearing must be open or the government must acquiesce in the witness's refusal to testify.

The decision of the Court of Appeals is reversed.[6] The case is remanded to the Court of Appeals for consideration of the plaintiffs' remaining assignments of error.

---

[6] Because we hold that the closed hearing provision of ORS 136.617, as enacted, violates Article I, section 10, of the Oregon Constitution, it is unnecessary for us to address the plaintiffs' contention that the judge's application of ORS 136.617 to close the hearing at issue in this case violated section 10. Obviously it did.