Argued and submitted March 31, 2022, reversed and remanded June 28, 2023

In the Matter of J. H.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

J. H.,
*Appellant.*

Washington County Circuit Court
20JU02775; A175034

533 P3d 640

In this juvenile delinquency appeal, youth seeks reversal of the juvenile court's judgment finding youth within its jurisdiction for conduct that, if committed by an adult, would constitute one count of first-degree sexual abuse. On appeal, youth asserts that the juvenile court erred by ruling that a four-year-old witness was competent to testify. *Held*: Applying *State v. Sarich*, 352 Or 601, 616, 291 P3d 647 (2012), the Court of Appeals concluded that the juvenile court applied an incorrect legal standard to determine whether the witness was competent to testify under OEC 601. Although the juvenile court accurately focused on the witness's general ability to perceive, recollect, and communicate, it did not make a determination of the witness's ability to perceive, recollect, and communicate about issues to be decided at trial. Further, the juvenile court's evidentiary error was not harmless.

Reversed and remanded.

Brandon M. Thompson, Judge.

Ginger Fitch argued the cause for appellant. Also on the brief was Youth, Rights & Justice.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, and Lagesen, Chief Judge, and Hellman, Judge.

POWERS, P. J.

Reversed and remanded.

**POWERS, P. J.**

In this juvenile delinquency appeal, youth seeks reversal of the juvenile court's judgment finding youth within its jurisdiction for conduct that, if committed by an adult, would constitute one count of first-degree sexual abuse. On appeal, youth asserts that the juvenile court erred by ruling that T was competent to testify. For the reasons explained below, we conclude that the juvenile court erred when it applied an incorrect legal standard to determine whether a witness was competent to testify under OEC 601 and that the error was not harmless. Accordingly, we reverse and remand.

The relevant facts are uncontested. The events giving rise to the juvenile court proceeding stem from youth babysitting his three-year-old cousin, T, during the summer of 2019. In November of that year, T told his parents that youth had sexually abused him. T's parents contacted law enforcement, who investigated, and the state eventually filed a petition in juvenile court asserting that youth was subject to the court's jurisdiction for conduct that, if committed by an adult, would constitute one count of sodomy in the first degree, ORS 163.405, and two counts of sexual abuse in the first degree, ORS 163.427.

As the jurisdictional hearing began in October 2020, the juvenile court held an OEC 104 hearing to assess T's competency to testify. Beginning when the court was attempting to swear in T as a witness and continuing throughout the preliminary hearing, the court and others in the courtroom repeatedly asked T to sit down, reposition himself, and pay attention to the questions being asked. In addition, T, who was four years old at the time of the hearing, would begin to sing "Twinkle, Twinkle, Little Star" intermittently throughout the hearing.

For example, as T was getting settled, the juvenile court began by asking T his name:

"THE COURT:   Can you tell me your—

"A:   Twinkle, twinkle—

"THE COURT: Why don't you tell me your name in the microphone?

"A: (Indiscernible.)

"[Prosecutor]: [T], can you turn around and—

"A: Twinkle, twinkle—twinkle—

"THE COURT: Can you tell me—yeah, got it. What did—what did mom—

"UNIDENTIFIED SPEAKER: Okay. We're going to leave this right here. Hey, [T].

"A: Twinkle, twinkle—

"UNIDENTIFIED SPEAKER: Hey, [T]. Can you sit all the [way] back there? Can you have your back touch that? Perfect. And then can you swing—swing your legs that way and face the judge? Do you see him back there?

"THE COURT: Hi.

"UNIDENTIFIED SPEAKER: Can you speak with him?

"THE COURT: I've got some questions. Can you tell me your whole name? What's your full name?

"A: [T].

"THE COURT: What's your last name, [T]?

"A: One, two, three, two, one.

"THE COURT: What's that?

"A: T-q-r-s."

The court then repeatedly asked T his age, and T responded a few times by again attempting to sing "twinkle, twinkle." Eventually, T provided some sort of nonaudible response that prompted the juvenile court to say: "Is that four? Yeah." The court then asked if T knew why he was there, and T responded: "Tell the truth."

The prosecutor began her questioning by asking T about a recent past event, *viz.*, whether he could recall what the prosecutor had worn the day prior:

"Q: Hey, [T]. Do you remember seeing me yesterday?

"A:   (No audible response.)

"Q:   Yeah. I had a different color face mask, though, right?

"A:   Yeah.

"Q:   Yeah. *** Well, no, can you stay right there? Make sure your back keeps touching the—

"A:   I'm going to draw TRS.[1]

"Q:   Maybe not right now, but, actually, if we're looking at the markers, let's talk about the markers. How many markers do we have here?

"A:   One, two, three, two.

"Q:   Let's talk about the colors. What color is this?

"A:   Black."

The prosecutor continued asking T questions about colors and then asked T whether he could recognize whether it was "a truth or a lie" that her shirt was pink (T said it was a lie and identified her shirt as blue) and what he had for breakfast (T said "water and coffee," which was a "truth" to him, and also testified that he had "peanut butter" for breakfast).

After T's testimony, the parties turned to their arguments. The prosecutor acknowledged the inaccuracy of some of T's responses, explaining that it was "an indication of his very young age," and asserted that, "ultimately, he was able to convey to the Court certain things about his day, what color shirt I was wearing, simple things for a four-and-a-half-year-old." Youth argued that T was not competent to testify, referring to other portions of T's testimony where he was unable to answer basic questions, showed a limited ability to take direction, and "did not answer the questions that were asked of him when it came to shows, when it came to breakfast. He *** answered things that were just *** not even related to the question." In rebuttal, the state acknowledged that T's responses were "barely there," citing his young age, "nervousness," and "distractibility," and stressed that the competency determination is "a very liberal standard and it's a very low standard for competency."

---

[1]  The record does not reflect what T meant by "TRS."

The juvenile court concluded that T was competent to testify and proceeded to a bench trial. As noted earlier, the juvenile court found youth within its jurisdiction, and this timely appeal follows.

Preliminary questions concerning the qualification of a person to be a witness are determined by the court. *State v. Sarich*, 352 Or 601, 613-14, 291 P3d 647 (2012) (citing OEC 104(1)). The proponent of the evidence must establish such facts to the court by a preponderance of the evidence. *State v. Lawson*, 352 Or 724, 754, 291 P3d 673 (2012) (citing *State v. Carlson*, 311 Or 201, 209, 808 P2d 1002 (1991)). The Supreme Court explained that our review of a trial court's competency determination involves a two-step process. First, we determine whether the trial court applied the correct legal standard to determine competency. Second, if the trial court applied the correct standard, we then review the record to determine whether the trial court abused its discretion in determining competency. *Sarich*, 352 Or at 615; *see also State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (explaining that the first step is to "review evidentiary rulings without deference to determine whether proper principles of law were applied correctly").

On appeal, youth challenges the juvenile court's determination of competency under OEC 601 and OEC 603.[2] Although youth argues on appeal that there was only one legally correct outcome on this record, we decline to resolve that issue because, as discussed below, the juvenile court applied the incorrect legal standard to determine witness competency.

OEC 601 provides: "Except as provided in [OEC 601 to 606], any person who, having organs of sense can perceive, and perceiving can make known the perception to others, may be a witness." The Oregon Supreme Court has expressed that "[d]iscretion is regularly exercised in favor of allowing the testimony[,]" explaining that "[a] witness

---

[2] OEC 603 requires that "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the conscience of the witness and impress the mind of the witness with the duty to do so." Because we conclude that the court erred under OEC 601, we need not address youth's OEC 603 challenge.

wholly without capacity is difficult to imagine. The question is one particularly suited to the jury [or factfinder] as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence." *State v. Milbradt*, 305 Or 621, 624, 756 P2d 620 (1988) (internal citations omitted); *see also State v. Sullivan*, 217 Or App 208, 212, 174 P3d 1095 (2007), *rev den*, 344 Or 539 (2008) ("Whether a person who has the ability to perceive and recount an event will do so accurately and truthfully 'is to be tested by cross-examination and not by a motion to disqualify the witness as incompetent.'" (Quoting *State v. Lantz*, 44 Or App 695, 700, 607 P2d 197, *rev den*, 289 Or 275 (1980).)).

Importantly, however, the Supreme Court has stressed that, "[a]lthough OEC 601 states a very liberal standard of competency, that standard requires that the witness's ability to perceive and make perceptions known to others encompasses the sort of perceptions that will be relevant to the issues to be decided at trial." *Sarich*, 352 Or at 616. Thus, when determining witness competency, "[t]he proper inquiry is not whether the person is able to perceive and communicate in any capacity, but rather '[w]hether [the] person has sufficient ability to perceive, recollect and communicate so it is worthwhile for the person to testify.'" *Id.* (citing Legislative Commentary to OEC 601, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 601.02, Art VI, 430 (5th ed 2007) (emphasis omitted)); *see also Sullivan*, 217 Or App at 212 ("A competent witness need only be able to recognize the necessity of telling the truth, to have personal knowledge and recollection of the relevant events, and be able to communicate that knowledge to the jury." (Quoting *Lantz*, 44 Or App at 700.)). It is the perceptions "that will be relevant to the issues to be decided at trial" that play an important role in this case. *Sarich*, 352 Or at 616.

In reviewing the record, we conclude that the juvenile court did not apply the correct legal standard. Although the court accurately focused on T's general ability to perceive, recollect, and communicate, it did not make a determination about T's ability to perceive, recollect, and communicate about issues to be decided at trial. In making its OEC 601 determination, the juvenile court expressly adopted the prosecutor's articulation of the standard, which focused

solely on whether T was able to perceive and communicate in any capacity. The prosecutor contended that "[i]t is a matter of \*\*\* whether [T] has the ability to perceive things and whether he has the ability to articulate that." The state further asserted,

> "[B]ased on the case law, it's not \*\*\* whether all the answers they're going to give are correct, but whether they can perceive things and articulate those. \*\*\* It's— \*\*\* again, he's a very young age. \*\*\* I mean, obviously, there's no question regarding how distractible he is. He's a four-and-a-half-year-old little boy. He—again, the case law is— it's a very liberal standard and it's a very low standard for competency."

Agreeing with the state's framing of the standard, the juvenile court explained, "I think [the prosecutor] is correct that as long as this witness can communicate factual matters as they understand them and understand to tell the truth, \*\*\* I believe, is sufficient." Missing from the juvenile court's analysis, however, is whether T had the ability to perceive, recollect, and communicate about the events in question from over a year earlier. That is, we understand the trial court to have concluded that T could perceive and communicate generally; however, the court did not delve further into whether T's perceptions "encompasses the sort of perceptions that will be relevant to the issues to be decided at trial" as required by *Sarich*. 352 Or at 616.

We further conclude that the trial court's evidentiary error is not harmless. *See State v. H. K. D. S.*, 305 Or App 86, 102, 469 P3d 770 (2020) (applying harmless error in a juvenile delinquency proceeding); *see generally State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (explaining that, under Article VII (Amended), section 3, of the Oregon Constitution, an appellate court must affirm a judgment if there is "little likelihood that the particular error affected the verdict"); ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). T's testimony was central to the state's case-in-chief, and the juvenile court relied on T's statements when it announced its jurisdictional findings. Accordingly, having concluded that the juvenile court erred and that the

evidentiary error is not harmless, we reverse and remand for further proceedings.

We recognize that the standard for an OEC 601 determination "permit[s] [a] trial court some latitude to tailor the competency inquiry to the anticipated circumstances of the trial." *Sarich*, 352 Or at 616. We further recognize that questions of weight and credibility should be left to the jury or factfinder. *Milbradt*, 305 Or at 624. Those general principals, however, do not dilute the OEC 601 standard and the specific determinations that the court needs to make to conclude that a witness is competent to testify.[3] As the court explained in *Sarich*, the proponent of a witness has the burden to prove by a preponderance of the evidence that the witness has "sufficient ability to perceive, recollect and communicate so it is worthwhile for the person to testify." 352 Or at 616. In the present case, the relevant events had occurred over a year prior. Under OEC 601, the state had the burden to prove that T had sufficient ability to perceive, recollect, and communicate about those events so that it was worthwhile for T to testify. Because we conclude that the court did not apply the correct legal standard, we reverse and remand for a new jurisdictional hearing.[4]

Reversed and remanded.

---

[3] Our decision today focuses solely on witness competency under OEC 601. There are, of course, other rules related to witness competency, including OEC 602 (requiring personal knowledge), OEC 603 (requiring an oath or affirmation that the witness will testify truthfully), OEC 604 (outlining requirements for interpreters), OEC 605 (providing that a judge presiding at the trial may not testify as a witness in that trial), and OEC 606 (providing that a juror may not testify under specified circumstances) that are not implicated in this case.

[4] To the extent that youth also contends that we should remand for "further proceedings without T's testimony," we decline that requested remedy. On remand, the state will first have to decide whether it will seek a new jurisdictional hearing or not. If it does seek a new jurisdictional hearing, then the state will need to make a choice about whether it will seek to have T testify again, proceed without T's testimony or statements, or seek to admit T's statements without T's testimony (or perhaps some combination of those options). If the state seeks T's testimony at a new jurisdictional hearing, then the parties will have an opportunity to develop a record and argue—and the juvenile court will have an opportunity to make a decision in the first instance—about whether there is any procedural bar to T's testimony in a second jurisdictional hearing and, if not, whether T is competent to testify under the correct legal standard.